AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF CELLULAR
PHONE (937) 979-6750 and (323) 286-5154.

)
)
)
)
)

Case No. 3: 15 mj 322

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A. This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____unknown_____ District of _____unknown_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. sections 841 and 846; 21 U.S.C. section 843(b) | Conspiracy to distribute and possess with the intent to distribute controlled substances; use of communication facilities in furtherance of violation of Title 21. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John M. Allen, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/23/15

_____
*Judge's signature*

City and state: Dayton, Ohio

Michael Newman, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

IN THE MATTER OF THE SEARCH OF A
CELLULAR TELEPHONE ASSIGNED
CALL NUMBER **(937) 979-6750 AND**
**CELLULAR TELEPHONE ASSIGNED**
**(323) 286-5154.**

Case No.

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, John M. Allen, being first duly sworn, hereby depose and state as follows:

### I.

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the

location of the cellular telephone assigned call number (937) 979-6750, placed in the subscriber

name of TRACFONE WIRELESS with an address of 9700 NW 112TH AVE, MEDLEY FL,

33178 (hereinafter referred to as "Target Telephone 1")  and for information about the location

of the cellular telephone assigned call number (323) 286-5154 (hereinafter referred to as "Target

Telephone 2"), whose service providers are AT&T, a wireless telephone service provider located

in North Palm Beach, Florida.  The Target Telephone is described herein and in Attachment A,

and the location information to be seized is described herein and in Attachment B.

2.      Affiant is a Special Agent for the United States Drug Enforcement Administration

("DEA") within the meaning of Title 21, United States Code, Section 878, that is an officer of

the United States who is empowered by law to conduct investigations of, and to make arrests for,

offenses enumerated in Title 21, United States Code, Section 878. Affiant has been employed as a Special Agent with the DEA since September 2010 and worked at the DEA office in Dayton, Ohio since January 2011. Prior to that time, between July 2005 and September 2010, Affiant was employed by the Kentucky State Police as a Kentucky State Trooper. Since the time of Affiant's employment with the DEA, Affiant has been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance in drug trafficking investigations of an international scope. Through training and experience, Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate.

3.      The facts in this affidavit come from my personal observations, my training and experience, the review of certain records, as well as information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1960 (operation of an unlicensed money remitting business); 21 U.S.C. § 841 (distribution of controlled substances); 21 U.S.C. § 843(b) (use of a telecommunication facility to facilitate a controlled substance offense); and 21 U.S.C. § 846 (conspiracy to distribute controlled substances) have been committed, are being committed, and will continue to be committed by a unknown male believed to "Eduardo" and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations; will help identify contraband, fruits of crime, or

other items illegally possessed, and will lead to the identification of other coconspirators who are engaged in the commission of these offenses.

## II.

## PROBABLE CAUSE

5.     Your AFFIANT is currently investigating a large heroin distribution organization with multiple targets located throughout the country, including, but not limited to: California, Ohio and New York.  More precisely, on August 20, 2015, DEA Chicago Field Division office provided information to your Affiant concerning a drug trafficking organization that was delivering illegal narcotics to this area being delivered in a 1996 Chevrolet Blazer, bearing CA License plate 3NLP418 (Hereinafter referred to as SUBJECT VEHICLE) on August 24, 2015.

6.     More precisely, on August 20, 2015, SA Christopher Marshall of the DEA Chicago Field Division office provided information to your Affiant concerning a drug trafficking organization that was delivering illegal narcotics from California and destined for Dayton, Ohio. In particular, SA Marshall advised that, earlier that day, DEA Chicago had a reliable, confidential source (CS) who provided information concerning a transit company delivering an automobile – namely, the **SUBJECT VEHICLE** – to the Dayton, Ohio, area and that the **SUBJECT VEHCILE** had heroin hidden inside of it.  (It should be noted that, according to DEA Chicago, the CS has provided reliable, verified information in the past that has led to drug seizures.)  The CS, in fact, provided detailed information concerning the Dayton delivery.

7.     Notably, according to the CS, Nationwide Transport, a company used to transport vehicles throughout the United States, was currently in the possession of the **SUBJECT VEHICLE** and planned to deliver it to 5380 Salem Avenue, Dayton, Ohio on August 24, 2015.

The CS advised DEA Chicago that the **SUBJECT VEHICLE** contained an unknown amount of heroin hidden in a natural void located under the glove compartment of the **SUBJECT VEHICLE**. The CS further provided a name and telephone number for the truck driver hauling the **SUBJECT VEHICLE** – namely, an individual identified as "Bogi" utilizing cellular telephone (323) 286-5154, *i.e.*, Target Telephone 2. The CS likewise identified the individual in Dayton, Ohio who planned to receive the SUBJECT VEHICLE – namely, "Eduarado" utilizing cellular telephone number (937) 979-6750, *i.e.*, Target Telephone 1. It should be noted that the CS identified the **SUBJECT VEHICLE** by make, model, license plate number, and color.

8.     On or about August 21, 2015, your Affiant subpoenaed telephone toll records and subscriber information for Target Telephone 1, believed to be used by "Eduardo." The subscriber information revealed that the cellular telephone was a Tracfone Wireless number with an unidentified subscriber. (Based on your training and experience, individuals engaged in illegal drug trafficking activity often do not place their true names or any name at all on their cellular telephone service). Your affiant reviewed the toll records and learned that between July 22, 2015 to August 20, 2015, Target Telephone 1 was only in contact with three other numbers – including (317) 739-9548. In particular, from July 30, 2015, to August 17, 2015, Target Telephone 1 contacted (317) 739-9548 on 23 occasions.

9.     On August 22, 2015, your Affiant spoke with SA Donald Weuve, out of the New York Field Division. During this conversation, SA Weuve advised that, on or about August 18, 2015, law enforcement conducted a traffic stop in New Jersey of a tractor trailer. During the ensuing stop, officers obtained consent to search the tractor trailer and found two kilograms of heroin and $150,000 in United States Currency (USC). That same day, SA Weuve interviewed

the driver of the tractor trailer, who, at the time of the traffic stop, was using cellular telephone (317) 739-9548.  During the interview, the driver admitted that, before he arrived in New Jersey, he/she had stopped in Dayton, Ohio, where he picked up $150,000 from an unknown subject. Based on telephone toll hits between the driver's telephone and Target Telephone 1, your Affiant believes that the driver obtained this cash, which represented drug proceeds, from "Eduardo" – the same individual identified that the CS identified as the intended recipient of the **SUBJECT VEHICLE** on August 24, 2015.

10.    Based on my training and experience, the above-described pattern of activity –is consistent with drug trafficking activity, to include the distribution of controlled substances and the collection of proceeds therefrom.  I also know that individuals engaged in drug trafficking activities frequently use and carry cellular telephones to facilitate their illegal business.  For instance, they often use cellular telephones – both text and call functions – to arrange the delivery of narcotics and the pick-up of drug proceeds.

11.   As described above, I know that a vehicle containing illegal narcotics is destined for Dayton, Ohio and a unknown male by the name of "Eduardo" is believed to be using the Target Telephone. GPS data or latitude-longitude data from the TARGET TELEPHONES will assist investigators identify potential coconspirators with whom "Eduardo" associates in Ohio, including drug dealers who may be purchasing narcotics from "Eduardo" or others, as well as individuals collecting money with "Eduardo".  Additionally, GPS data or latitude-longitude data from the TARGET TELEPHONE will assist investigators identify potential locations at which "Eduardo" and his associates store, hide, maintain or secret drug proceeds (including cash) or narcotics.

12. Based on my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the Target Telephone on AT&T's network or with such other reference points as may be reasonably available.

14. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Telephone.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

16. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

17. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Telephone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

18. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_____

John M. Allen
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on ____8/23____, 2015.

_____

HONORABLE MICHAEL NEWMAN
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

1.      A cellular telephones assigned call number (937) 979-6750, placed in the subscriber

name of TRACFONE WIRELESS with an address of 9700 NW 112TH AVE, MEDLEY FL,

33178, and cellular telephone assigned call number (323) 286-5154 and whose wireless service

provider is AT&T, a company located at North Palm Beach, Florida.

2.      Information about the location of the Target Telephone that is within the possession,

custody, or control of AT&T.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of Target Telephone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of Target Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government.  In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Telephone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure.  See 18 U.S.C. § 3103a(b)(2).